## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

DARION JONES                            :
213 Pinehurst Road                      :
York, PA 17402                          :      Civil Action No.:
                                        :
        Plaintiff,             :
                                        :      **JURY TRIAL DEMANDED**
  v.                                :
                                        :
CHURCH & DWIGHT CO., INC.               :
500 Charles Ewing Boulevard             :
Ewing, NJ 08628                         :
                                        :
        Defendant.             :

## COMPLAINT – CIVIL ACTION

Plaintiff, Dairon Jones ("Plaintiff"), by and through his undersigned counsel, for his Complaint against Church & Dwight Co., Inc. ("Defendant"), alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action to redress violations by Defendant of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* As a result, Plaintiff has suffered damages as set forth herein.

1

## PARTIES

2.      Plaintiff, Darion Jones, is a citizen of the United States and Pennsylvania, where he currently maintains an address at 213 Pinehurst Road, York PA, 17402.

3.      Defendant, Church & Dwight Co., Inc., is a for-profit corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 500 Charles Ewing Boulevard, Ewing NJ, 08628, and a place of business in the Commonwealth of Pennsylvania located at 5197 Commerce Drive, York, PA 17408.

## JURISDICTION AND VENUE

4.      Paragraphs 1 through 3 are hereby incorporated by reference as though the same were fully set forth at length herein.

5.      On or about February 28, 2024, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e), and 43 P.S. § 959(a). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2024-03976. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

6.     By correspondence dated July 3, 2024, Plaintiff received a Notice of Right to Sue from the EEOC regarding his charge, advising Plaintiff that he had ninety (90) days to file suit against Defendant.

7.     Plaintiff filed the instant action within the statutory time frame applicable to his federal claims.

8.     Although one (1) year has not passed since Plaintiff dual filed his Charge with the EEOC and the PHRC, courts in this Circuit have adopted a flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the one (1) year deadline expires during the court proceedings. O'Malley v. Dowd Marketing, Inc., No. 17-cv-1419, 2018 WL 6313616, at *10-11 (M.D. Pa. Nov. 15, 2018) (citations omitted).

9.     Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintain this action.

10.    This is an action authorized and instituted pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.

11.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising the laws of the United States.

12.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

13.    The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania in this judicial district.

## FACTUAL BACKGROUND

14.    Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15.    By way of background, Plaintiff suffers from diabetic kidney disease, specifically type 1 diabetes mellitus with end-stage renal failure.

16.    Diabetic kidney disease is a disability within the meaning of the ADA/PHRA because it substantially limits one or more major life activities, including but not limited to eating, working, and moving.

17.    By way of further background, the treatment for Plaintiff's diabetic kidney disease is dialysis.

18.    On or about March 14, 2022, Plaintiff began work for Defendant as a Production Operator at their location in York, Pennsylvania.

19.    The Production Operator is a manufacturing position whose duties include assisting with various aspects of production operations.

20.    On or about March 21, 2023, Plaintiff found out that he had kidney failure earlier than expected due to Plaintiff's diabetic kidney disease.

21.    Shortly thereafter, Plaintiff inquired about FMLA leave with (First Name Unknown) Albuquerque ("Ms. Albuquerque"), Defendant's Human Resources Representative.

22.    Ms. Albuquerque informed Plaintiff that he would need to contact the Hartford Insurance Company ("Hartford") regarding FMLA leave and short-term disability.

23.    On or about March 21, 2023, Plaintiff submitted a request for leave through Hartford.

24.    That same day, Plaintiff received a response that Hartford would notify Plaintiff of their decision about his leave request.

25.    Plaintiff scheduled his surgery for on or about March 31, 2023.

26.    However, due to the clinic's schedule, the surgery was postponed until on or about April 4, 2023.

27.    On or about March 29, 2023, Plaintiff's condition deteriorated further and he was hospitalized at WellSpan York Hospital.

28.    Plaintiff remained inpatient at the facility until on or about April 3, 2023.

29.     On or about April 4, 2023, Plaintiff returned to WellSpan York Hospital to undergo Fistula surgery.

30.     Following the Fistula surgery, Plaintiff was discharged that same day.

31.     The surgery delayed any previously scheduled procedures.

32.     On or about May 3, 2023, Becky Gordon, MD ("Dr. Gordon"), WellSpan Health, filled out and signed a Certification of Health Care Provider for the Employee's Own Serious Health Condition for FMLA leave for Plaintiff's dialysis appointments on Fridays.

33.     On or about May 4, 2023, Plaintiff returned to work four (4) weeks after being hospitalized.

34.     That same day, Plaintiff had a medical episode, which caused Plaintiff to vomit and feel dizzy.

35.     During this episode, first responders were summoned by Defendant.

36.     After an evaluation by the medical team, Plaintiff was sent home by Defendant.

37.     During this time, either Defendant or the first responders recommended FMLA leave for Plaintiff.

38.     On or about May 5, 2024, Plaintiff returned to work and submitted his FMLA paperwork to Tom Deardorff ("Mr. Deardorff"), Defendant's Human Resources Representative, and Ms. Albuquerque.

39.   Plaintiff's FMLA paperwork included restrictions prescribed by Dr. Gordon.

40.   These restrictions included no pushing, pulling, or lifting.

41.   On or about May 5, 2023, Mr. Deardorff and Ms. Albuquerque informed Plaintiff that the restrictions submitted by Dr. Gordon on his FMLA paperwork were too strict.

42.   Specifically, Mr. Deardorff told Plaintiff that the restrictions for no pushing, pulling, or lifting were too strict.

43.   Mr. Deardorff and Ms. Albuquerque would not let Plaintiff return to work until these restrictions were changed.

44.   On or about May 11, 2023, Plaintiff returned to work and submitted a revised FMLA Certification where Dr. Gordon had removed the restrictions for no pushing, pulling, or lifting.

45.   Mr. Deardorff and Ms. Albuquerque accepted the new paperwork due to the removal of the physical restrictions.

46.   The scheduling for Plaintiff's intermittent FMLA days was done through the Hartford Insurance portal.

47.   Plaintiff scheduled his future dialysis appointments for Fridays through the Hartford portal.

48.    Defendant's Human Resources department instructed Plaintiff on how to use the portal to submit scheduled absences after Plaintiff had difficulty navigating the interface for the site.

49.    Cathy Holmes ("Ms. Holmes"), Defendant's Human Resources Representative, told Plaintiff that on days that he did not feel well, Plaintiff should call out and use FMLA leave.

50.    Ms. Holmes instructed Plaintiff to call into Defendant's "call-off" line and provide Defendant with information regarding his shift, supervisor, and what type of leave Plaintiff was requesting.

51.    Justin Clark ("Mr. Clark"), Defendant's Shift Supervisor, instructed Plaintiff to leave work and go home anytime Plaintiff experienced a flareup of his symptoms.

52.    A flareup of Plaintiff's symptoms included a drop in blood pressure, loss of equilibrium causing dizziness, feeling lightheaded, nauseous, and muscle cramps.

53.    These flareups occurred occasionally and were a side effect of Plaintiff's dialysis treatment.

54.    Defendant would always summon first responders to come on scene anytime Plaintiff had a flareup.

55.     Following one of Plaintiff's flareups, Ms. Holmes instructed Plaintiff that if he did not feel well, Plaintiff should use Plaintiff's FMLA leave.

56.     Defendant completed an incident report after each occurrence of a flareup.

57.     Defendant's attendance policy included being penalized one (1) point for each full day absent.

58.     According to Defendant's policy, once an employee reached five (5) attendance points, Defendant may terminate the employee.

59.     On or about August 22, 2023, Plaintiff was summoned by Natasha Roscoe ("Ms. Roscoe"), Defendant's Shift Supervisor, to a meeting in Defendant's supervisory staff room.

60.     This meeting was attended by Ms. Roscoe, Mr. Clark, and Plaintiff.

61.     During this meeting, Ms. Roscoe presented Plaintiff with paperwork that requested Plaintiff's signature.

62.     This paperwork was a formal written warning for days that Plaintiff was either late or absent.

63.     Plaintiff read the warning.

64.     Plaintiff asked why the warning was dated July 10, 2023.

65.     Plaintiff received no response to this question.

66.    Plaintiff explained that these dates were dates that he had submitted for approval through the Hartford portal.

67.    Ms. Roscoe simply responded, "We do not deal with those."

68.    The written warning stated in the "Further Action Pending" section that "FMLA points will be removed once approved."

69.    On or about August 23, 2023, Plaintiff logged onto the Hartford portal.

70.    Plaintiff entered the dates into the Hartford's portal calendar for approval.

71.    On or about August 25, 2023, Plaintiff was notified that Hartford denied the approval of the submitted absences.

72.    On or about August 31, 2023, Plaintiff received a call from Defendant.

73.    Plaintiff was unable to answer this phone call.

74.    On or about September 1, 2023, Ms. Holmes called Plaintiff shortly before the start of his shift.

75.    Ms. Holmes explained that additional dates should have been included on Plaintiff's written warning from on or about August 22, 2023.

76.    These dates were all in early July 2023.

77.    Ms. Holmes stated that the addition of these dates would put Plaintiff over Defendant's threshold.

78.    Ms. Holmes told Plaintiff that he was terminated due to violation of Defendant's attendance policy.

79.    At the time of termination, Plaintiff had approximately five (5) weeks of intermittent FMLA leave remaining.

80.    As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**COUNT I**
**FAMILY AND MEDICAL LEAVE ACT**
**29 U.S.C. § 2601**, *et seq.*
**INTERFERENCE AND RETALIATION**

81.    Paragraphs 1 through 80 are hereby incorporated by reference as though the same were fully set forth at length herein.

82.    Defendant employed at least fifty (50) employees within the applicable seventy-five (75) mile radius for each working day in each of twenty (20) or more calendar days in the current or preceding year.

83.    Plaintiff was an eligible employee under the FMLA and thus was entitled to twelve (12) weeks of unpaid leave and/or intermittent leave to seek treatment for his serious health condition.

84.    Plaintiff invoked his right to FMLA-qualifying leave by providing adequate notice to Defendant of his need for medical leave as soon as he became

aware of the need for leave and/or as soon as was practicable. <u>See</u> 29 C.F.R. § 825.303.

85.    Plaintiff provided sufficient information to Defendant for it to reasonably determine whether the FMLA may apply to the request for leave or time off. <u>See</u> 29 C.F.R. § 825.303(b).

86.    Defendant willfully violated the FMLA by, intentionally and/or with reckless disregard for Plaintiff's rights under the FMLA, denying Plaintiff benefits under the FMLA to which he was entitled.

87.    Defendant willfully violated the FMLA by, intentionally and/or with reckless disregard for Plaintiff's rights under the FMLA, terminating Plaintiff because he invoked his right to FMLA-qualifying leave.

88.    The aforementioned actions of Defendant constitute interference and retaliation under the FMLA.

89.    As a result of Defendant's actions, Plaintiff has suffered a loss of employment, earnings, raises, and other significant economic benefits.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.   Back wages, front pay, and bonuses in an amount to be determined at trial;

B.   Liquidated damages for willfully violating the FMLA;

C.   Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.   Pre-judgment interest in an appropriate amount; and

E.   Such other and further relief as is just and equitable under the circumstances.

**COUNT II**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101**, *et seq.*
**DISCRIMINATION**

90.   Paragraphs 1 through 89 are hereby incorporated by reference as though the same were fully set forth at length herein.

91.   Defendant had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the then-current or preceding calendar years applicable to Plaintiff's claims.

92.   Defendant is therefore an "employer" as defined and covered by the ADA.

93.   At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the ADA.

94.     Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

95.     Plaintiff's diabetic kidney disease is a disability within the meaning of the ADA because it substantially limits one or more major life activities, including but not limited to eating, working, and moving.

96.     Defendant terminated Plaintiff because of his disability.

97.     Despite his disability, Plaintiff would have been able to perform the essential functions of her job with or without a reasonable accommodation.

98.     Plaintiff requested a reasonable accommodation for his disability in the form of intermittent medical leave so that he could perform the essential functions of his position.

99.     Defendant failed to engage in an interactive process in good faith with Plaintiff to determine a reasonable accommodation for his disability.

100.   Defendant refused to provide Plaintiff with a reasonable accommodation for his disability.

101.   By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by terminating Plaintiff because of his disability.

102.   By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to offer Plaintiff a reasonable accommodation for his disability.

103.   By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has also violated the ADA by declining to engage in the interactive process in good faith with Plaintiff in connection to his disability.

104.   As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including but not limited to:

A.   Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial;

B.   Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.   Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.    Pre-judgment interest in an appropriate amount;

E.    Such other and further relief as is just and equitable under the circumstances; and,

F.    Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT III**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101**, *et seq.*
**RETALIATION**

105.   Paragraphs 1 through 104 are hereby incorporated by reference as though the same were fully set forth at length herein.

106.   Defendant had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the then-current or preceding calendar years applicable to Plaintiff's claims.

107.   Defendant is therefore an "employer" as defined and covered by the ADA.

108.   At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the ADA.

109.   Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

16

110.   Plaintiff's diabetic kidney disease is a disability within the meaning of the ADA because it substantially limits one or more major life activities, including but not limited to eating, working, and moving.

111.   Despite his disability, Plaintiff would have been able to perform the essential functions of his job with or without a reasonable accommodation.

112.   Plaintiff requested a reasonable accommodation for his disability in the form of intermittent medical leave so that he could perform the essential functions of his position.

113.   Defendant retaliated against Plaintiff because he made a good faith request for a reasonable accommodation for his disability.

114.   By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by terminating Plaintiff in retaliation for his request for a reasonable accommodation for his disability.

115.   As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including but not limited to:

A.      Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial;

B.      Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.      Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.      Pre-judgment interest in an appropriate amount;

E.      Such other and further relief as is just and equitable under the circumstances; and,

F.      Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT IV**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951**, *et seq.*
**DISABILITY DISCRIMINATION**

116.   Paragraphs 1 through 115 are hereby incorporated by reference as though the same were fully set forth at length herein.

117.   Defendant had four (4) or more employees at all times applicable to Plaintiff's claims.

118.    Defendant is therefore an "employer" as defined and covered by the PHRA.

119.    At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the PHRA.

120.    Pursuant to the PHRA, Plaintiff is an individual with one or more disabilities.

121.    Plaintiff's diabetic kidney disease is a disability within the meaning of the PHRA because it substantially limits one or more major life activities, including but not limited to eating, working, and moving.

122.    Defendant terminated Plaintiff because of his disability.

123.    Despite his disability, Plaintiff would have been able to perform the essential functions of his job with or without a reasonable accommodation.

124.    Plaintiff requested a reasonable accommodation for his disability in the form of intermittent medical leave so that he could perform the essential functions of his position.

125.    Defendant failed to engage in an interactive process in good faith with Plaintiff to determine a reasonable accommodation for his disability.

126.    Defendant refused to provide Plaintiff with a reasonable accommodation for his disability.

127.   By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the PHRA by terminating Plaintiff because of his disability.

128.   By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the PHRA by failing to offer Plaintiff a reasonable accommodation for his disability.

129.   By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has also violated the PHRA by declining to engage in the interactive process in good faith with Plaintiff in connection to his disability.

130.   As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.   Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial;

B.   Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

C.     Pre-judgment interest in an appropriate amount;

D.     Such other and further relief as is just and equitable under the circumstances; and,

E.     Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT V**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951**, *et seq.*
**RETALIATION**

131.   Paragraphs 1 through 130 are hereby incorporated by reference as though the same were fully set forth at length herein.

132.   Defendant had four (4) or more employees at all times applicable to Plaintiff's claims.

133.   Defendant is therefore an "employer" as defined and covered by the PHRA.

134.   At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the PHRA.

135.   Pursuant to the PHRA, Plaintiff is an individual with one or more disabilities.

136.    Plaintiff's diabetic kidney disease is a disability within the meaning of the PHRA because it substantially limits one or more major life activities, including but not limited to eating, working, and moving.

137.    Despite his disability, Plaintiff would have been able to perform the essential functions of his job with or without a reasonable accommodation.

138.    Plaintiff requested a reasonable accommodation for his disability in the form of intermittent medical leave so that he could perform the essential functions of his position.

139.    Defendant retaliated against Plaintiff because he made a good faith request for a reasonable accommodation for his disability.

140.    By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the PHRA by retaliating against Plaintiff because he asked for a reasonable accommodation for his disability.

141.    As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in hi favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial;

B.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

C.    Pre-judgment interest in an appropriate amount;

D.    Such other and further relief as is just and equitable under the circumstances; and,

E.    Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

142.   Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MARZZACCO NIVEN & ASSOCIATES**

By:    /s/ *Benjamin Salvina*
          Benjamin Salvina, Esq.
          945 East Park Drive, Suite 103
          Harrisburg, PA 17111
          TEL: 717-231-1640
          FAX: 717-231-1650
          bsalvina@klnivenlaw.com
          *Attorney for Plaintiff*

Dated: October 1, 2024

## <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and his claims to damages, to any defenses to same, including but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, emails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.